NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>DENNIS ELWELL,<br><br>        Defendant. | Criminal Action No.: 09-864 (JLL)<br><br>**AMENDED OPINION** |

**LINARES**, District Judge.

  This matter comes before the Court by way of Defendant Dennis Elwell's motion for a judgment of acquittal or new trial pursuant to Federal Rules of Criminal Procedure 29(c)(2) and 33(a), respectively. The Court has considered the submissions and arguments made by Defendant Elwell and the United States (the "Government") during oral argument on September 19, 2011 in support of and in opposition to the instant motion. Based on the reasons that follow, Defendant's motion is DENIED.

### BACKGROUND

  As the Court writes only for the parties, the underlying facts will not be repeated here in detail except where necessary to provide context for the motion. On July 23, 2009, Defendant Dennis Elwell was arrested for violating 18 U.S.C. §§ 1951(a) and 2 for knowingly and willfully

1

conspiring to "obstruct, delay, and affect interstate commerce by extortion under color of official right, by accepting and agreeing to accept corrupt payments that were paid and to be paid by another, with that person's consent, in exchange for defendant Dennis Elwell's official assistance in Secaucus Government matters." (Compl. at 1). A federal grand jury returned a three-count indictment on November 17, 2009 and a superceding indictment on May 17, 2011, which charged as follows: Count I, conspiracy to commit extortion under color of official right in violation of 18 U.S.C. § 1951(a); Count II, attempted extortion under color of official right in violation of 18 U.S.C. §§ 1951(a) and 2; and Count III, acceptance of a corrupt payment in violation of 18 U.S.C. §§ 666(a)(1)(B) and 2. On July 6, 2011, the jury returned a verdict of guilty as to Count III and not guilty on Counts I and II.

Defendant Elwell presently argues that the evidence at trial was insufficient to support a guilty verdict for the Count 3, that Defendant accepted something of value in exchange for official action or inaction or for his ability to exert official influence over others. Defendant alternatively argues that the interest of justice requires a new trial based on the following: (1) the Government's introduction of Defendant's bad character by association and the Government's linking of Defendant to other corrupt Hudson County politicians; (2) wrongful use of Fed. R. Evid. 404(b) evidence; (3) Government statements to the jury regarding Defendant and his attorney.

**STANDARDS and DISCUSSION**

**I. Motion for a Judgment of Acquittal**

Federal Rule of Criminal Procedure 29 provides that a court may set aside a guilty verdict and enter a judgment of acquittal if there is insufficient evidence to sustain a conviction. When considering the sufficiency of the evidence, the court must "determine whether the evidence submitted at trial, 'when viewed in the light most favorable to the government, would allow a rational trier of fact to convict.'" United States. v. Hart, 273 F.3d 363, 371 (3d Cir. 2001) (quoting United States. v. Helbling, 209 F.3d 226, 238 (3d Cir. 2000). "A verdict will be overruled only if no reasonable juror could accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt." United States v. Coleman, 811 F.2d 804, 807 (3d Cir. 1987). Further, "[i]t is 'immaterial' that the evidence may permit a 'less sinister conclusion' than the one the jury made." United States v. Holmes, 387 Fed. Appx. 242, 245 (3d Cir. 2010) (quoting United States v. Smith, 294 F.3d 473, 478 (3d Cir. 2002)). A court should only find that evidence is insufficient to sustain a conviction "where the prosecution's failure is clear." United States v. Leon, 739 F.2d 885, 891 (3d Cir. 1982). Thus, the court employs a standard of review that is "particularly deferential" when a defendant challenges the sufficiency of the evidence supporting a jury verdict. United States v. Peppers, 302 F.3d 120, 125 (3d Cir. 2002) (quoting United States v. Dent, 149 F.3d 180, 187 (3d Cir. 1998).

In addition to the present motion, Defendant Elwell made a motion for judgment of acquittal pursuant to Federal Rule 29(a) at the close of the Government's case in chief at trial. (Tr. 7.127-128). The Court denied the motion finding that a reasonable jury could find in favor of the Government based on the following: statements by David Esenbach regarding involvement in New York and with regard to the $10,000 cash payment; that money was given to the Defendant but he never said anything thereafter; the implication from what Manzo wrote on a napkin regarding

3

Defedant's receipt of the money, which read "yes, no problem"; Agent Coyle's testimony regarding Elwell's statements; and Manzo's testimony about handing over the money. (Tr. 7.128-129). The Court stated that the totality of the Government's evidence supported denying Defendant's Rule 29 motion: "[f]rom everything that has come in, certainly a reasonable jury could find in favor of the Government, and I think the elements of the crime with regard to the jurisdiction, the Town of Secaucus, how much money, based on the stipulation, they received in federal aid, the transfer of the money, and the statements made by Esenbach, i.e., Dwek, with regard to what he wanted in exchange for the money, I think when all of those things are taken together, there is certainly enough for the matter to go to the jury. . . ." Id.

The jury found Defendant Elwell guilty of accepting a corrupt payment, Count III. As discussed above, in considering post-conviction motions for acquittal, courts should be particularly deferential to jury findings.

**A. Proof of the Elements of Bribery**

Defendant presently argues that the Government failed to prove beyond a reasonable doubt each of the necessary elements of bribery proscribed in 18 U.S.C. §666(a)(1)(B): (1) at the relevant time "defendant was an agent of a local government," (2) Secaucus "was a local government that received federal benefits in excess of $10,000 in a one-year period," (3) "defendant agreed to accept or accepted something of value," (4) "defendant acted knowingly, willfully and corruptly with the intent to be influenced in connection with any business, a transaction, or a series of transactions of the Town of Secaucus," and (5) the value of the business, transaction, or series of transaction to which the payment related was at least $5,000." (Def's Mot., 11).

4

In particular, Defendant argues that the Government did not meet its burden of proof with regard to the fourth element, because there was no quid pro quo or evidence indicating that Elwell promised to use his influence to expedite zoning approvals or provide preferential treatment in exchange for the $10,000. With regard to that element, the Court advised the jury that it was sufficient for the Government "to show that Solomon Dwek, posing as a developer, reasonably believed that the public official had the actual, residual, or anticipated official power to help him with respect to matters pending before a local government." (Tr. 10.52).

Elwell argues that he made it clear he was powerless to assist and that no reasonable juror could conclude that the government established beyond a reasonable doubt that he agreed to accept the money in exchange for official action or inaction. The Government argues that there was ample evidence for a jury to conclude that Elwell accepted the bribe in exchange for his official assistance in his capacity as the Mayor of Secaucus. Namely, that Esenbach explained that he had problems with previous developments in the Oranges; that he needed Elwell's support in "smooth[ing] out the speed bumps"; that he was not sure what he was going to need, but that he knew he was "gonna need something," including support from Elwell with his projects; Esenbach's statement "[j]ust, uh, make sure - handle me. . . Don't treat me like an opponent. . . Don't treat me like an enemy. . . Treat me like a friend and help me. You know. Just support my stuff. Expedite my applications"; and statements that Esenbach wanted his "road paved" and did not want to have "any issues", etc. (Govt. Exs. 109, 111, 114). The Government argues that Elwell "continuously and unambiguously responded in the affirmative, either by nodding his head or verbally expressing his agreement. (Govt. Exs. 111, 114). No additional facts or circumstances have come to light since the time of Defendant's original motion. Thus, the Court finds that viewing the evidence in the light most

5

favorable to the Government, a rational trier of fact could convict Defendant Elwell for Count III.

**B. Post-trial Statements by a Juror**

Defendant additionally argues that based on the statements of a juror after trial, "the evidence produced could only permit a finding of guilt beyond a reasonable doubt by the use of surmise." (Def's Mot., 11). The Government argues that the Court should not "consider the post-trial, out of court statements of one juror's opinion of the thought processes motivating the jury's decision. . . ." (Gov't Br., 14). The Court agrees. The statements of a single juror to the media after trial do not bear on whether a reasonable jury could conclude that the evidence was sufficient to support a finding of Defendant's guilt beyond a reasonable doubt.

**II. Motion for a New Trial**

Pursuant to Federal Rule of Criminal Procedure 33(a), "upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Third Circuit precedent dictates that a trial court should only order a new trial if it finds that "there is a serious danger that a miscarriage of justice has occurred - that is, that an innocent person has been convicted." United States v. Brennan, 326 F.3d 176, 189 (3d Cir. 2003) (quoting United States v. Santos, 20 F.3d 280, 285 (7th Cir. 1994). A new trial must be granted where there is a reasonable possibility that "a trial error had a substantial influence on the verdict." Virgin Is. v. Commissiong, 706 F.Supp. 1172, 1184 (D.Vi. 1989). However, "[rule 33] motions are not favored and should be 'granted sparingly and only in exceptional cases.'" United States v. Silveus, 542 F.3d 993, 1004 (3d

Cir. 2008) (quoting Gov't of Virgin Islands v. Derricks, 810 F.2d 50, 55 (3d Cir. 1987)). Unlike an insufficiency of the evidence claim, discussed above, the court should not consider evidence in the light most favorable to the government. "[R]ather, on a Rule 33 motion, the court exercises its own judgment in assessing the government's case." United States v. Johnson, 302 F.3d 139, 150 (3d Cir. 2002) (citing United States v. Lacey, 219 F.3d 779, 783-4 (8th Cir. 2000). Thus, in considering motions for a new trial, the court should use its own judgment to evaluate the government's case and determine whether a manifest injustice occurred due to an error at trial which had a substantial impact on the verdict.

In particular, the Defense argues that the "Government conducted its improper attack on [Defendant's] character in three distinct but interrelated ways," which had a cumulative effect: misleading the Court about the need and purpose of evidence regarding other Hudson County politicians including former County Executive Robert Janiszewski; introducing evidence that Defendant's allegedly violated his bail order and contacted his former secretary, Madelon Michaels; and insinuating that Defendant and his attorney were colluding to mislead the jury (Def's Mot., 7-8, 17).

"Federal prosecutors have a special and solemn duty to refrain from improper methods of obtaining a conviction. . . As such, a prosecutor 'may prosecute with earnestness and vigor - indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones.'" United States v. Morena, 547 F.3d 191, 193 (3d Cir. 2008) (quoting Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629 (1935)). "The test for prosecutorial misconduct is whether the conduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process' in light

of the entire proceeding." Id. at 194 (citations omitted). Each claim of prosecutorial misconduct will be addressed below.

**A. The Government's Linking of Defendant to Corrupt Hudson County Politicians**

At trial there were references to previously convicted Hudson County politicians, namely former Hudson County Executive Robert Janiszewski, during cooperating witness's Ronald Manzo's testimony, the Government's cross-examination of Defendant Elwell, and during the Government's summation. The Government solicited testimony from cooperating witness Ronald Manzo about why talking about the $10,000 cash payment in the diner made him paranoid, and asked him about Janiszewski. (Tr. 4, 39-40), as well as Nidia Colon and William Braker, other Hudson County politicians that Manzo knew "had gotten into trouble". (Tr. 4, 43-44). However, when the Government began asking questions about the particulars of the convicted politicians' misdeeds, the Court sustained Defense's objection, ceased the line of questioning, and provided the following instruction to the jury:

> Ladies and Gentlemen, you need to understand that sometimes evidence is admitted for a particular purpose, and I don't want you to get confused as to why we are talking about other politicians that may have gotten into trouble. First of all, you cannot infer guilt of the defendant by virtue of the fact that other politicians have been in trouble. Each case is individual in nature. That is not the reason why that evidence is coming in. Mr. Manzo indicated that he had some kind of concern, or I think "paranoia" was the word used, about the way the conversations were taking place in a public place. So this information is being introduced for the basis of his concern about having these kind of conversations when he was aware that other people have gotten into trouble. Okay. So that is the only purpose for which it could be considered.

(Tr. 4, 45: 3-19). The Government argues that this line of questioning went to the basis of Manzo's paranoia and that the only link to the other Hudson County politicians was "the fact that Elwell was

8

a Mayor in a town in Hudson County." (Gov't Br., 30). Particularly in light of the limiting instruction given to the jury, this line of questioning was appropriate inasmuch as a reasonable fact finder could find that Manzo's knowledge that other politicians had gotten in trouble formed the basis of his paranoia and affected his behavior in the diner. Further, there is a presumption that juries follow instructions. United States v. Joseph, 178 Fed. Appx. 163, 168 (3d Cir. 2006). Defendant has not overcome the presumption in this instance.

Next, during the Government's cross-examination of Elwell, he further discussed a conversation with David Drumeler, the town administrator, and Drumeler's background. (Tr. 178). In response to the Government's question about Drumeler's background, Elwell stated that he was assistant to Bob Janiszewski, and the Government clarified that this was the same individual about whom Manzo testified. (Tr. 8, 178:1-16). This was not an improper linking of Defendant to corrupt officials, but rather providing permissible context, and Defendant did not object.

Elwell mentioned Janiszewski a second time during cross-examination in reference to a meeting at which both men were present and statements made about the power of mayors in Hudson County. (Tr. 9, 140:2 – 141:13). The Government argues that Elwell opened the door to this line of questioning by stating that he was a weak mayor during his direct examination. (Tr. 7, 185:2-189:4). In this instance, the Court agrees.

Defendant Elwell takes particular issue with the following statement by the Government during summation:

> Ladies and gentlemen, Dennis Elwell was no babe in the woods. He was a savvy politician. He was a politician who had been in Hudson County for 17 years, a place where Ron Manzo told you, unfortunately, there is no stranger to corruption, a place where some of the highest-ranking people in Hudson County government, the county

9

> executive, the freeholders, have gotten into legal trouble for taking cash payoffs. This was the world that Dennis Elwell lived in in the summer of 2009. But you don't need to be a savvy politician. You don't need 17 years of experience to know that if you are a public official, you cannot agree to provide your assistance in exchange for $10,000 in cash.

T- 11.6-8. Defendant did not object to the statement at the time, but presently argues that the decision was a tactical one so as to not draw the jury's attention to the statement. The Third Circuit "has 'outlined three factors to consider in determining whether improper comments are prejudicial: the scope of the comments within the context of the entire trial, the effect of any curative instructions given, and the strength of the evidence against the defendant." U.S. v. Joseph, 178 Fed. Appx. 162, 168 (3d Cir. 2006) (quoting U.S. v. Gambone, 314 F.3d 163, 179 (3d Cir. 2003).

With regard to the second factor, Defendant did not object at the time of the statement at issue. As to the third factor, the strength of the evidence weighs against the Defendant because as already discussed above, a reasonable fact finder could find him guilty beyond a reasonable doubt.

Finally, within the context of the entire trial, the Government's comment during summation was not overly prejudicial. The case United States v. Mister, 374 Fed.Appx. 171 (3d Cir. 2010), is instructive. In that case, the defendant argued that statements made during summation by the prosecution encouraged the jury to convict based on an association with criminals. The defendant also took issue with the prosecutor's statement "that 'swans don't swim in cesspools' in reference to Mister and the corruption that occurred in Pleasantville in 2006." Id. at 5. With respect to the first issue, the court found that the trial judge's instruction to the jury was curative. Second, the court found that the statement "swans don't swim in cesspools" was not "so fundamentally unfair and prejudicial as to contribute to a miscarriage of justice." Id. at 6.

Here, Defendant points out that the interaction in Mister was limited to co-defendants and came in without objection. Although the statement came in without objection during summation and there was no limiting instruction at that time, when Defendant objected earlier in the trial, the Court provided a limiting instruction to the jury. Also, the statement "swans don't swim in cesspools" is arguably more prejudicial than the statement at issue here, that the Defendant was "no babe in the woods." The statement was not so fundamentally unfair and prejudicial as to contribute to a miscarriage of justice in light of the context in which the statement was made, the limiting statements that "[y]ou don't need 17 years of experience to know that if you are a public official, you cannot agree to provide your assistance in exchange for $10,000 in cash," and the fact that the entirety of the disputed statement including the limitation was approximately half a page of a summation that totaled forty pages. Thus, any improper association of Defendant Elwell with other corrupt Hudson County politicians was not overly prejudicial so as to result in a miscarriage of justice.

**B. Wrongful Use of Fed. R. Evid. 404(b) Evidence**

Federal Rule of Evidence 404(b) provides, in relevant part, as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

In determining whether to admit evidence under Rule 404(b), a trial court "must consider two issues: first, whether the evidence is logically relevant under Rule 404(b) and Rule 402, to any issue other

than the defendant's propensity to commit the crime; and second, whether under Rule 403 the probative value of the evidence outweighs its prejudicial effect." United States v. Himelwright, 42 F.3d 777, 781 (3d Cir. 1994). As provided by the Third Circuit, "the threshold established by this rule is not overly high, and . . . almost all evidence can be admitted under 404(b) so long as it is for a purpose other than to demonstrate the defendant's bad character in order to encourage the jury to convict on the basis of a propensity to commit crime." U.S. v Okorie, 425 Fed.Appx. 166 (3d Cir. 2011). However, "[a]dmission of bad acts evidence must be carefully scrutinized because, 'although the government will hardly admit it, the reasons proffered to admit prior-bad-act evidence may often be a Potemkin, because the motive, we suspect, is often mixed between an urge to show some other consequential fact as well as to impugn the defendant's character." United States v. Morena, 547 F.3d 191 (3d Cir. 2008). "Thus, when evidence of prior bad acts is offered, the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged." U.S. v. Himelwright, 42 F.3d 777, 782.

At issue here is evidence pertaining to the Defendant's alleged violation of his bail order and consciousness of guilt in relation to his discussions with his former secretary, Madelon Michaels. Defendant Elwell argues that there was insufficient evidence to justify argument or instruction of consciousness of guilt because the alleged violation of the bail order is irrelevant to the issue and the resulting testimony and instruction were extremely prejudicial.[1] Specifically, Defendant argues that

---

[1] The Court provided the following consciousness of guilt instruction to the jury: "If you believe that the defendant engaged in acts of concealment, then you may consider this conduct, along with the other evidence in this case, in deciding whether the government has proved beyond a reasonable doubt that the defendant committed the crimes charged. This conduct may indicate that the defendant thought he was guilty of the crime charged and was trying to avoid punishment, but on the other hand, sometimes an innocent person may engage in similar conduct for some other reason. Whether or not this evidence causes you to find that the defendant was conscious of his guilt of

"the evidence elicited as to the subject phone call was woefully inadequate to support a finding of an attempt by Defendant to intimidate or influence Ms. Michaels." (Def's Br. at 29).

The non-propensity purpose for which the evidence was admitted here was to demonstrate Defendant Elwell's consciousness of guilt and knowledge of wrongdoing. Namely, Defendant Elwell violated his bail order when he got on the phone with his former secretary Ms. Michaels. During Redirect, Defendant Elwell explains "[w]ell, I basically said to her, because I heard my wife talking, I said, do you know that you are a witness, you know, a star witness, or the Government's witness against me, or something to that effect. I was going to ask her, would she please have her attorney contact my attorney, but she hung up." (Tr. 9, 187:12-17).

"It is well-established that evidence of threats or intimidation is admissible under Rule 404(b) to show a defendant's consciousness of guilt." United States v. Gatto, 995 F.2d 449, 454 (3d Cir. 1993). Here, the Government established at trial that Defendant Elwell's signed and certified a bail order prohibited him from contacting any witnesses; Elwell violated that order when he got on the phone with Ms. Michaels without counsel present and started talking about her role in his case and that Ms. Michaels hung up on him; and during a chance meeting thereafter, Ms. Michaels asked Defendant if he was mad at her. Particularly in light of the special relationship between Defendant and Ms. Michaels, that she was his secretary, this established a sufficient chain of inferences that Defendant violated the bail order in an attempt to intimidate Ms. Michaels.

In addition, just because a bail order could be violated in a number of ways which have no relationship to witness intimidation, as Defendant argues, that does not mean that there is an

---

the crime charged, and whether that indicates that the defendant committed the crimes charged is entirely up to you as the sole judges of the facts. (Tr. 10, 61:10-23).

insufficient link in this case where there is a reasonable inference that Defendant did violate the bail order to intimidate a witness. Thus, in this case, the probative value of Defendant's violation of the bail order outweighs the prejudice that the jury will consider Defendant "the type of person who violates court orders." (Def's Br., 31).

Defendant also argues that the Government improperly used the 404(b) evidence that Elwell violated his bail during summation to attack his character for truthfulness. In response, the Government argues that the violation of bail was admissible as a specific instance of conduct under Federal Rule of Evidence 608(b). "[Specific instances of conduct] may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness . . . concerning the witness' character for truthfulness or untruthfulness. . . ." Fed. R. Evid. 608(b). Given that Defendant repeatedly denied doing anything wrong and stated that he did not believe he was accepting a bribe, his violation of the bail order was conduct that could be construed as inconsistent with that position and one which created a reasonable inference of consciousness of guilt, which was probative of his character for truthfulness. Thus, the Court finds that the Government did not improperly use evidence that Defendant violated his bail order because it was a specific act that was probative of his character for truthfulness.

**C. Government Statements to the Jury Regarding Defendant and his Attorney During Summation**

Defendant next argues that the Government's references to interactions between Defendant and defense counsel were improper. The first reference occurred during the Government's cross-examination of Defendant. Defendant responded to a question by the Government about his

whereabouts at the time of an alleged phone call with Manzo on July 15th. (Tr. 9, 132-3). The Government then stated that defense counsel said Defendant was in North Bergen. Defense counsel raised an objection, which was sustained on the basis of Defendant's previous statement that he was unsure of his exact location. Defendant presently argues that the implication that Defendant's counsel made such a misrepresentation was not corrected. (Deft's Brief at 34). However, during defense counsel's cross examination of Ronald Manzo, counsel asked the witness questions about the July 15th call and whether according the phone records Defendant was in North Bergen. (Tr. 5, 207-209). In light of the questions asked of Manzo during cross, the fact that the objection was only sustained on the grounds that the Defendant was unsure of his location was not prejudicial enough to rise to the level of having a substantial impact on the verdict.

During rebuttal, the Government stated to the jury that defense counsel was taking things out of context and "misleading you to believe." (T11, 158-159). "As a general rule, a prosecutor should refrain from attacking the integrity and ethical standards of defense counsel." United States v. Pungitore, 910 F.2d 1084, 1142 (3d Cir. 1990) (citations omitted). However, there is nothing inherently improper about attacking the tactics and arguments advanced by defense counsel. United States v. Lore, 430 F.3d 190 (3d Cir. 2005). It was not improper for the Government to address the tactics employed by defense counsel, particularly because the comments were made in reference to the July 15th phone call discussed above.

Additionally, Defendant argues that the Government suggested defense counsel manufactured a defense with respect to replacing money. Defense counsel argues that there is a necessary inference that Elwell learned that the FBI only recorded two serial numbers from his counsel during the discovery process. However, this is not necessarily the case, as Defendant could have seen the

15

photographs with the first two serial numbers himself. In any event, that is not a reasonable inference to draw from the Government's statement that "the defendant said that at some point he learned that. . . the FBI only had those first two serial numbers." (Tr. 11, 43: 5-11).

Finally, the government alleged as follows: ". . . when you saw [Defendant Elwell] testify, when he was asked a difficult question, you saw him look over at counsel table. Rather than telling the truth you saw him looking as if he was looking for the right answer." (Tr. 11, 177: 19-23). The defense objected and requested a mistrial, which the Court denied. The Court instructed the jury that the comment made during rebuttal only regarded his demeanor and that "[t]here is nothing in this case that would suggest that defense counsel in any way was acting improperly in the representation of his client or trying to telegraph any answers to him or telling him how to answer any questions. So to the extent that you may have taken that comment for that reason, I ask you to disregard it, because that was not the intent of the comment, and in fact, there is no basis for that." (Tr. 11, 189-190).

"The prejudice, which may inure to a defendant as a result of allegedly improper comments made during the government's closing argument, must be evaluated in light of that closing argument as a whole." Government of Virgin Islands v. Joseph, 770 F.2d 343, 350 (3d Cir. 1985) (finding that five paragraphs of improper comments in a fourteen page summation were not "cumulative evidence of a proceeding dominated by passion and prejudice") (citations omitted). The comments made here were less than half a page of a forty page rebuttal summation and the court provided an instruction to the jury about the intended meaning of the comment and for what purpose it could be considered, noting that the comment could be considered with regard to Elwell's demeanor while testifying.

Similarly, the combined effect of the comments does not meet the Rule 33 standard because they were either context specific, or limited by an instruction. Further, as discussed above, the Court ruled during trial and again finds that the evidence of bribery was sufficient for a reasonable jury to conclude that Elwell was guilty of Count III beyond a reasonable doubt.

**D. Cumulative Effect**

Elwell argues that the cumulative effect of the Government's statements and 404(b) evidence discussed above requires a new trial. Where there is "no evidentiary or instructional error or prosecutorial misconduct," a cumulative error claim must also fail. United States v. Powell, No. 09-4427, 2011 WL 4037404 (3d Cir. 20110). "The cumulative effect of each non-error does not rise to constitutional error; as the saying goes, zero plus zero equals zero." Id. Thus, Elwell's cumulative error claim must fail.

## CONCLUSION

Thus, for the reasons discussed above, Defendant's motion pursuant to Federal Rules of Procedure 29 and 33 is DENIED. The evidence presented by the Government against Defendant Elwell was such that a reasonable juror could accept it as sufficient to support a conclusion that Elwell was guilty beyond a reasonable doubt as to Count III. In addition, after evaluating all of the evidence presented in the government's case, the Court determines that a manifest injustice did not occur due to an error at trial with a substantial impact on the verdict.

An appropriate Order accompanies this Opinion.


Dated: October 19, 2011                                               /s/ Jose L. Linares
                                                                                                              Jose L. Linares
                                                                                                              United States District Judge